# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY GADLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO. 3:13-17 |
| v. | ) |
| | ) JUDGE KIM R. GIBSON |
| JERRY ELLIS and MARCIA ELLIS, | ) |
| *trading as* JERRY ELLIS | ) |
| CONSTRUCTION, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

**I.   Introduction**

This matter comes is before the Court on a motion for partial summary judgment (ECF No. 16) filed by Defendants Jerry Ellis ("Ellis") and Marcia Ellis ("Marcia"). The Plaintiff, Gary Gadley, filed a brief in opposition (ECF No. 24), to which Defendants filed a reply (ECF No. 29). For the reasons that follow, Defendants' motion for partial summary judgment will be granted.

**II.   Jurisdiction and Venue**

The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441. Venue is proper under 28 U.S.C. § 1391.

**III.   Background**

The events underlying this action center upon a timber frame home built by Gadley between 2010 and 2011 for his personal use. Gadley designed the home with the assistance of an architectural firm and served as his own general contractor during its

construction. (ECF No. 18-1 at 9-14). For his roof, Gadley decided to use structural insulated panels ("SIPs") after learning about them from a friend and discussing the product with representatives from an SIP manufacturer at a timber frame conference. (*Id.* at 22-23). Gadley eventually contracted with a company in the state of Indiana, Thermocore, to design and construct the SIPs for his home. (*Id*. at 24-25).

In response to an inquiry from Gadley, Thermocore identified Jerry Ellis Construction as a panel installer and provided Gadley's contact information to Ellis. (*Id.* at 30). Shortly thereafter, Marcia contacted Gadley on behalf of Jerry Ellis Construction and sent Gadley a proposal for the installation of the SIPs. (ECF No. 18-2 at 19, 21). She also provided a letter from Jerry Ellis explaining the process of installing SIP panels. (*Id.* at 22). Gadley initially believed Marcia to be Ellis's wife, but later learned that she was his mother. (ECF No. 18-1 at 32-33). Throughout her communications with Gadley, Marcia frequently used the words "we" and "us" in reference to Jerry Ellis Construction. (ECF No. 18-2 at 19-22). However, while Ellis's mother helped him out by serving as his secretary and filing his taxes, she was never paid for her work, never received any share of the profits of Jerry Ellis Construction, and had no ownership stake in the company. (ECF No. 18-6 at 5-7).

On October 5, 2011, Gadley agreed to hire Jerry Ellis Construction to install the SIP panels on his roof for $7,550. (ECF No. 18-1 at 30-31). The contract identified Jerry Ellis Construction and Jerry Ellis as the parties with whom Gadley was contracting. (ECF No. 26-4). The contact information listed on the contract included Marcia's email address and phone numbers for both Ellis and Marcia. (*Id.*).

2

Ellis installed the SIPs on Gadley's home between October 27, 2011, and October 29, 2011. (ECF No. 1-2 at ¶ 15, 22). Almost immediately, Gadley identified several shortcomings in the quality of the installation. These issues included numerous gaps and misalignments between the panels, a lack of proper overhang at the edge of the roof, and the fact that the end of each SIP did not properly rest on a support rafter. (ECF No. 18-1 at 34-36, 39-40). Gadley also became alarmed at the amount of cutting and sledgehammering that Ellis had to do in order to get the panels to fit properly. (ECF No. 26-12 at 6-7). When Gadley raised these concerns, Ellis repeatedly assured him that the installation was proceeding in a normal manner and that nothing was wrong. (*Id.*).

Based on his belief that the SIP panels had been improperly installed, Gadley initiated the instant action by filing a complaint in the Court of Common Pleas of Somerset County on December 21, 2012. (ECF No. 1-2 at 3). Defendants removed the complaint to this Court on January 18, 2013. (*Id.* at 1). In his complaint, Gadley asserts a claim for breach of contract at Count I, a claim for breach of express and implied warranties at Count II, and a private cause of action pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") at Count III. Gadley named both Ellis and Marcia as defendants based on his belief that both individuals had an ownership interest in Jerry Ellis Construction. (ECF No. 18-1 at 32-33).

On January 6, 2014, Defendants filed the instant partial motion for summary judgment seeking dismissal of Marcia Ellis and arguing that Gadley's UTPCPL claim is barred by the gist of the action doctrine and/or the economic loss doctrine. (ECF No. 16). Gadley filed a brief in opposition to Defendant's motion for summary judgment on

February 24, 2014. (ECF No. 24). Defendants filed a reply brief on March 20, 2014. (ECF No. 29). Both parties filed concise statements of material facts and supporting exhibits. Thus, Defendants' motion is fully briefed and ripe for review.

IV.     **Standard of Review**

Summary judgment is appropriate only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Melrose, Inc. v. Pittsburgh*, 613 F. 3d 380, 387 (3d Cir. 2010). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F. 3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F. 3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F. 3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F. 3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party

meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F. 3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F. 3d 144, 148 (3d Cir. 1993).

## V. Discussion

Defendants seek partial summary judgment on two grounds. First, they assert that Gadley cannot maintain a claim against Marcia Ellis because she is not an owner of Jerry Ellis Construction and does not do business as Jerry Ellis Construction. Second, Defendants contend that Gadley's UTPCPL claim is barred by the gist of the action doctrine and the economic loss doctrine. The Court will separately address each argument.

### A. Summary Judgment as to Marcia Ellis

As noted above, Gadley has asserted three claims in the instant action: breach of contract; breach of express and/or implied warranties; and unfair trade practices and fraud in violation of the UTPCPL. Liability under each of these claims is based on the threshold premise that a defendant was either a party to the contract at issue or the provider of the allegedly deficient service. *See, e.g.*, *KDH Elec. Sys., Inc. v. Curtis Tech. Ltd.*,

5

826 F. Supp. 2d 782, 794 (E.D. Pa. 2011). Defendants contend that Marcia Ellis satisfies neither of these two conditions.

A careful review of the record reveals no evidence that Marcia has an ownership interest in Jerry Ellis Construction. Ellis supplied uncontradicted testimony that Marcia's only role with the company consists of unpaid secretarial work such as communicating with clients, preparing paperwork, and filing tax returns. Marcia has never received a paycheck from Jerry Ellis Construction or shared any proceeds from the company's profits. Moreover, she was not a party to the contract between Gadley and Jerry Ellis and did not perform any work under that contract. In short, there is no evidence to suggest any basis for holding Marcia liable for the deficient work allegedly performed by Ellis.[1] Accordingly, Marcia's motion for summary judgment will be granted.

### B. Summary Judgment as to Gadley's UTPCPL Claim (Count III)

The UTPCPL provides a private cause of action for "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful [under the UTPCPL]." 73 P.S. § 201-9.2. Gadley contends that Ellis violated the following unfair trade practices described in the UTPCPL:

> (1) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or

---

[1] Gadley's sole argument for Marcia Ellis' inclusion in this action stems from her use of the words "we" and "us" to refer to Jerry Ellis Construction in the course of her email communications with Gadley in her role as secretary. Nevertheless, an employee's use of the word "we" to refer to her place of employment is insufficient to establish an ownership interest in that company.

>
> quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;
>
> (2) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
>
> (3) Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to, or after a contract for the purchase of goods or services is made;
>
> (4) Making repairs, improvements or replacements on tangible, real or personal property, of a nature or quality inferior to or below the standard of that agreed to in writing;
>
> (5) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding.

(ECF No. 1-2 at ¶ 48) (citing 73 P.S. § 201-2(v), (vii), (xiv), (xvi), and (xxi)). Defendants respond that Gadley's UTPCPL claim is barred by both the gist of the action doctrine and the economic loss doctrine. Because the Court concludes that Count III is barred by the economic loss doctrine, it need not consider whether the UTPCPL claim is also barred under the gist of the action doctrine.

The economic loss doctrine provides that "no cause of action [can] be maintained in tort for negligence or strict liability where the only injury was 'economic loss'—that is, loss that is neither physical injury nor damage to tangible property." *2-J Corp. v. Tice*, 126 F. 3d 539, 541 (3d Cir. 1997) (citing *Aikens v. Baltimore & Ohio R.R. Co.*, 501 A. 2d 277, 279 (Pa. Super. 1985)). In other words, where a "plaintiff's only alleged damage is a diminution in the value of a product plaintiff has purchased, Pennsylvania law says that plaintiff's redress comes from the law of contract, not the law of tort." *Martin v. Ford*

*Motor Co.*, 765 F. Supp. 2d 673, 684 (E.D. Pa. 2011) (quoting *Stein v. Fenestra Am., L.L.C.*, No. 09-5038, 2010 WL 816346, at *3 (E.D. Pa. Mar. 9, 2010)).

The Pennsylvania Supreme Court has not yet considered whether the economic loss doctrine bars intentional fraud and deceptive trade practice claims that stem from a statute such as the UTPCPL. *See Covertech Fabricating, Inc. v. TVM Bldg. Products, Inc.*, No. 3:13-cv-150, 2014 WL 2605427, at *5 (W.D. Pa. June 11, 2014). However, in *Werwinski v. Ford Motor Company*, 286 F. 3d 661 (3d Cir. 2002), the Third Circuit predicted that the Pennsylvania Supreme Court would indeed hold that UTPCPL claims are barred by the economic loss doctrine:

> The economic loss doctrine is designed to place a check on limitless liability for manufacturers and establish clear boundaries between tort and contract law. Carving out an exception for intentional fraud would eliminate that check on liability and blur the boundaries between the two areas of law, thus exposing manufacturers to substantially greater liability.

*Id*. at 680-81. The Third Circuit concluded that "exempting [statutory fraud] claims from the effects of the economic loss doctrine would virtually nullify the doctrine since [the statute] is broad enough to encompass nearly every misrepresentation claim in the commercial sales context, and claims arising from product failure can readily be recast as misrepresentation claims." *Id*. at 681 (citing *Weather Shield Mfg., Inc. v. PPG Indus., Inc.*, No. 97-C-707-S, 1998 WL 469913, at *5 (W.D. Wis. June 11, 1998)).

The *Werwinski* decision has generated considerable criticism. *See, e.g., O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 275 (E.D. Pa. 2003) (engaging in a lengthy critique of *Werwinski* and declining to adopt the Third Circuit's reasoning); *Martin v. Ford*

*Motor Co.*, 765 F. Supp. 2d at 685, n.8 ("Since the Third Circuit decided *Werwinski*, numerous courts have recognized its reasoning may be inconsistent with Pennsylvania law.") (collecting cases). Indeed, Pennsylvania state courts have frequently refused to follow *Werwinski*. *See, e.g., Knight v. Springfield Hyundai*, 81 A. 3d 940, 952 (Pa. Super. 2013) ("The claims at issue in this case are statutory claims brought pursuant to the UTPCPL, and do not sound in negligence. Therefore, the economic loss doctrine is inapplicable and does not operate as a bar to [plaintiff's] UTPCPL claims."); *DeFebo v. Anderson Windows, Inc.*, 654 F. Supp. 2d 285, 294 (E.D. Pa. 2009) (acknowledging that some Pennsylvania state courts have refused to follow *Werwinski* in applying the economic loss doctrine to UTPCPL claims).

Nonetheless, a district court "is bound by a Third Circuit decision where that court has predicted how the Pennsylvania Supreme Court will decide an issue." *Martin*, 765 F. Supp. 2d at 685 n.8 (quoting *DeFebo v. Anderson Windows, Inc.*, 654 F. Supp. 2d 285, 294 (E.D. Pa. 2009)); *see also Itzkoff v. F&G Realty of N.J., Corp.*, 890 F. Supp. 351, 356 (D. N.J. 1995) (noting that, in determining issues of state law where the state supreme court has not spoken, district courts are to give proper regard to decisions of the intermediate appellate courts but are bound by decisions of the Third Circuit predicting how the state supreme court would rule). In the absence of any further guidance from the Pennsylvania Supreme Court or the Third Circuit, the Court concludes that *Werwinski* is binding and dispositive. *See, e.g., Tubman v. USAA Cas. Ins. Co.*, 943 F. Supp. 2d 525, 531 (E.D. Pa. 2013) ("Despite disagreement following *Werwinski*, it remains the controlling law unless revisited by the Pennsylvania Supreme Court."); *Wulf v. Bank of America, N.A.*, 798 F.

9

Supp. 2d 586, 595-96 ("Despite several cases questioning *Werwinski*, none have come from the Pennsylvania Supreme Court or the Third Circuit. Therefore, this court is bound by *Werwinski*."); *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 550 (D. Md. 2011) ("While this Court recognizes the considerable debate over the validity of the Third Circuit's decision, the Court cannot ignore this pronouncement of Pennsylvania law.").

In his brief in opposition, Gadley raises several arguments in an attempt to avoid the application of the economic loss doctrine to his UTPCPL claim. First, Gadley cites several of the dissenting cases outlined above and simply argues that *Werwinski* was incorrectly decided. ([ECF No. 24 at 14](#)). However, for the reasons set forth above, the Court concludes that it is bound by *Werwinski*.

Next, Gadley asserts that the economic loss doctrine is inapplicable because Ellis's allegedly fraudulent activities resulted in physical property damage. ([ECF No. 24 at 12](#)). Specifically, Gadley contends that his roof is both cosmetically and structurally unsound and that the SIP panels will need to be removed and replaced. ([Id. at 13-14](#)). Gadley also suggests that further damage is likely because the roof is not weather-tight. ([Id.](#)).

It is axiomatic that the economic loss doctrine only applies to claims for "economic damages unaccompanied by physical injury or property damage." *Excavation Techs., Inc. v. Columbia Gas Co. of Pa.*, 985 A. 2d 840, 841 n.3 (Pa. 2009); *see also 2-J Corp*, 126 F.3d at 541 (economic loss doctrine bars "loss that is neither physical injury nor damage to tangible property"). However, it is equally well-established that "property damage" within the meaning of the doctrine does not include damage to the "product itself." *See 2-J Corp.*, 126 F. 3d at 542 ("[W]hile tort recovery is barred for damage a product causes to itself, such

10

recovery is available for damage the failing product causes to 'other property.'"); *REM Coal Co., Inc. v. Clark Equip. Co.*, 563 A. 2d 128, 133 (Pa. Super. 1989) (noting that Pennsylvania law precludes recovery for economic losses in a negligence action if the only damage alleged is damage to the product itself, with no other property damage or personal injury alleged).

Moreover, in the construction context, courts have generally held that "damage to the attendant structure of a building as a result of products used in construction [do] not constitute damage to 'other property'" within the meaning of the economic loss doctrine. *See Longport Ocean Plaza Condominium, Inc. v. Robert Cato & Assoc., Inc.*, No. 00-cv-2231, 2002 WL 436742, at *5 (E.D. Pa. Mar. 18, 2002) (collecting cases); *Am. Stores Props., Inc. v. Spotts, Stevens & McCoy, Inc.*, 678 F. Supp. 2d 328, 335-36 (E.D. Pa. 2009) (holding that damage to a deficiently installed retaining wall did not constitute damage to "other property" because the "product" was the finished retaining wall itself); *see also Calloway v. City of Reno*, 993 P. 2d 1259, 1267-69 (Nev. 2000) (water intrusion, damage to floor and ceilings, and structural and wood decay not recoverable in tort against subcontractors who used allegedly defective roofing and siding under economic loss doctrine); *Oceanside at Pine Point Condominium Owners Ass'n v. Peachtree Doors, Inc.*, 659 A. 2d 267, 271 (Me. 1995) (water damage resulting from allegedly defective windows and doors not recoverable in tort against manufacturer under economic loss doctrine).

Here, the only physical damage alleged in Gadley's complaint is the damage to the roof caused by the deficiently installed SIP panels. There is no allegation that these deficiencies caused personal injury or damage to any property other than the "product

11

itself"—the SIP panels. As such, Gadley has failed to assert the type of physical property damage that is required to escape the purview of the economic loss doctrine.

Finally, Gadley contends that the economic loss doctrine only applies to transactions between commercial enterprises, as opposed to individuals. (ECF No. 24 at 15). This argument was squarely rejected by the Third Circuit. *Werwinski*, 286 F. 3d at 672 (noting that Pennsylvania courts have routinely applied the economic loss doctrine to "commercial and noncommercial purchasers alike;" and concluding that the doctrine applies to "transactions involving ordinary consumers"). This Court is bound by that holding.

**V.     Conclusion**

For the reasons set forth above, Defendants' partial motion for summary judgment (ECF No. 16) is granted. Summary judgment is granted in favor of Defendant Marcia Ellis on all counts and in favor of Defendant Jerry Ellis d/b/a Jerry Ellis Construction with respect to Count III.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| GARY GADLEY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. 3:13-17 |
| v. | ) | |
| | ) | JUDGE KIM R. GIBSON |
| JERRY ELLIS and MARCIA ELLIS, | ) | |
| *trading as* JERRY ELLIS | ) | |
| CONSTRUCTION, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

AND NOW, this 23rd day of July, 2014, this matter coming before the Court on Defendants' partial motion for summary judgment (ECF No. 16), **IT IS HEREBY ORDERED** that Defendants' motion is **GRANTED**. For the reasons set forth above, summary judgment is granted in favor of Defendant Marcia Ellis on all counts and in favor of Defendant Jerry Ellis d/b/a Jerry Ellis Construction with respect to Count III. Marcia Ellis is hereby dismissed from this action.

BY THE COURT:

/s/ Kim R. Gibson

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE