IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARY GADLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. 3:13-17 |
| v. | ) | |
| | ) | JUDGE KIM R. GIBSON |
| JERRY ELLIS, *trading as* JERRY ELLIS | ) | |
| CONSTRUCTION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### I.    Introduction

Before the Court in this matter are Plaintiff Gary Gadley's motion for reconsideration and motion to reopen discovery. (ECF No. 41). In his motion for reconsideration, Plaintiff asks this Court to reconsider its previous ruling on Defendant Jerry Ellis's motion for summary judgment. In its memorandum opinion and order (ECF No. 38), this Court granted Defendant's motion for summary judgment, finding that the economic loss doctrine barred Plaintiff's claim at Count III of the complaint for damages under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). Plaintiff now argues that the Court should reconsider its previous ruling based on new evidence in the case, specifically, the intrusion of water into Plaintiff's home, which allegedly has caused damage to the home as a result of the defective installation of the roof panels at issue in this case. For the reasons below, the Court will **GRANT** Plaintiff's motion for reconsideration and will vacate its ruling concerning Plaintiff's claims against Defendant under the UTPCPL at Count III of the complaint.

## II.      Jurisdiction and Venue

The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441.  Venue is proper under 28 U.S.C. § 1391.

## III.     Background

The Court previously set forth the facts underlying this action in its memorandum opinion on Defendant's motion for summary judgment.  (*See* ECF No. 38).  The Court will summarize the relevant facts below and will include Plaintiff's asserted "newly acquired facts."  (*See* ECF No. 42 at 3-4).

This case arises from the construction of a timber frame home by Plaintiff, Gary Gadley, for his personal use.  Plaintiff designed the home with the assistance of an architectural firm and served as his own general contractor during its construction.  (ECF No. 18-1 at 9-14).  For his roof, Plaintiff decided to use structural insulated panels ("SIPs") after learning about them from a friend and discussing the product with representatives from an SIP manufacturer at a timber frame conference.  (*Id*. at 22-23).  Plaintiff eventually contracted with a company, Thermocore, in the state of Indiana to design and construct the SIPs for his home.  (*Id*. at 24-25).

In response to an inquiry from Plaintiff, Thermocore identified Defendant, Jerry Ellis Construction,[1] as a panel installer and provided Plaintiff's contact information to Defendant.  (*Id*. at 30).  Shortly thereafter, Defendant contacted Plaintiff, providing him with a proposal for the installation of the SIPs.  (ECF No. 18-2 at 19, 21).  On October 5,

---

[1] The Court will refer to both Jerry Ellis and Jerry Ellis Construction interchangeably as "Defendant."

2011, Plaintiff agreed to hire Defendant to install the SIP panels on his roof for $7,550.

(ECF No. 18-1 at 30-31).

Defendant installed the SIPs on Plaintiff's home between October 27, 2011, and October 29, 2011. (ECF No. 1-2 at ¶ 15, 22). Almost immediately, Plaintiff identified several shortcomings in the quality of the installation. These issues included numerous gaps and misalignments between the panels, a lack of proper overhang at the edge of the roof, and the fact that the end of each SIP did not properly rest on a support rafter. (ECF No. 18-1 at 34-36, 39-40). Plaintiff also became alarmed at the amount of cutting and sledgehammering that Defendant had to do in order to get the panels to fit properly. (ECF No. 26-12 at 6-7). When Plaintiff raised these concerns, Defendant repeatedly assured him that the installation was proceeding in a normal manner and that nothing was wrong. (Id.).

Based on his belief that the SIP panels had been improperly installed, Plaintiff initiated the instant action by filing a complaint in the Court of Common Pleas of Somerset County on December 21, 2012. (ECF No. 1-2 at 3). Defendant removed the complaint to this Court on January 18, 2013. (Id. at 1). In his complaint, Plaintiff asserted a claim for breach of contract at Count I, a claim for breach of express and implied warranties at Count II, and a private cause of action pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law at Count III. On January 6, 2014, Defendant filed a partial motion for summary judgment,[2] arguing that Plaintiff's UTPCPL

---

[2] At the time of the summary judgment motion, Marcia Ellis was also a defendant in this case. However, the Court dismissed Marcia Ellis from the case, and thus Jerry Ellis, trading and doing

3

claim was barred by the gist of the action doctrine and/or the economic loss doctrine. (ECF No. 16). On July 23, 2014, the Court issued a memorandum opinion and order granting Defendant's motion for summary judgment as to Plaintiff's UTPCPL claim. (ECF No. 38).

On December 12, 2014, Plaintiff filed the pending motion for reconsideration (ECF No. 41) along with a brief in support (ECF No. 42). Plaintiff then filed a number of supplements to his motion and brief. (ECF Nos. 46, 47). Defendant filed a response in opposition. (ECF No. 48). Thereafter, the parties filed additional briefing and exhibits. (*See* ECF Nos. 50, 51-1, 55, 56-2, 62). Plaintiff's motion is now fully briefed and ripe for review.

## IV. Standard of Review

"The purpose of a motion for reconsideration is 'to correct manifest errors of law or fact or to present newly discovered evidence.'" *Lazaridis v. Wehmer*, 591 F. 3d 666, 669 (3d Cir. 2010) (*quoting Max's Seafood Cafe v. Quinteros*, 176 F. 3d 669, 677 (3d Cir. 1998)). A motion for reconsideration may only be granted if the moving party demonstrates at least one of the following grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice. *Lazaridis*, 591 F. 3d at 669 (*citing N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F. 3d 1194, 1218 (3d Cir. 1995)); *Max's Seafood Cafe*, 176 F. 3d at 677.

---

business as Jerry Ellis Construction, is the only remaining defendant. The Court's dismissal of Marcia Ellis is not at issue in Plaintiff's motion for reconsideration.

Because courts have a strong interest in the finality of their judgments, a motion for reconsideration is inappropriate to express mere dissatisfaction with a court's previous ruling. *D'Angio v. Borough of Nescopeck*, 56 F. Supp. 2d 502, 504 (M.D. Pa. 1999); *Velazquez v. UPMC Bedford Mem'l Hosp.*, 338 F. Supp. 2d 609, 611 (W.D. Pa. 2004) ("dissatisfaction with [a court's] ruling is not a proper basis for reconsideration"). Furthermore, "a motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002); *see also Lazaridis*, 591 F. 3d at 669 (upholding a district court's denial of a motion for reconsideration because advancing "the same arguments that were in [the movant's] complaint and motions" was "not a proper basis for reconsideration"). In other words, it is improper on a motion for reconsideration to restyle or reargue issues previously presented. *Pahler v. City of Wilkes-Barre*, 207 F. Supp. 2d 341, 355 (M.D. Pa. 2001).

## V. Discussion

The Court previously granted Defendant's partial motion for summary judgment as to Count III of the complaint, finding that Plaintiff's UTPCPL claim was barred by the economic loss doctrine. Plaintiff now contends that the Court should reconsider its ruling based on newly acquired evidence.

In his complaint, Plaintiff asserted a cause of action under the Pennsylvania UTPCPL, among other claims. (ECF No. 1-2 at ¶ 48) (citing 73 P.S. § 201-2(v), (vii), (xiv), (xvi), and (xxi)). The UTPCPL provides a private cause of action for "[a]ny person who

purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful [under the UTPCPL]." 73 P.S. § 201-9.2. In his motion for summary judgment, Defendant argued that Plaintiff's UTPCPL claim was barred by both the gist of the action doctrine and the economic loss doctrine. This Court agreed, finding that Count III was barred by the economic loss doctrine; the Court did not consider whether the UTPCPL claim was also barred by the gist of the action doctrine.

### A.      Economic Loss Doctrine

The economic loss doctrine provides that "no cause of action [can] be maintained in tort for negligence or strict liability where the only injury was 'economic loss'—that is, loss that is neither physical injury nor damage to tangible property." *2-J Corp. v. Tice*, 126 F. 3d 539, 541 (3d Cir. 1997) (citing *Aikens v. Baltimore & Ohio R.R. Co.*, 501 A. 2d 277, 279 (Pa. Super. 1985)). In other words, where a "plaintiff's only alleged damage is a diminution in the value of a product plaintiff has purchased, Pennsylvania law says that plaintiff's redress comes from the law of contract, not the law of tort." *Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 684 (E.D. Pa. 2011) (quoting *Stein v. Fenestra Am., L.L.C.*, No. 09-5038, 2010 WL 816346, at *3 (E.D. Pa. Mar. 9, 2010)).

As the Court previously explained, the Pennsylvania Supreme Court has not yet considered whether the economic loss doctrine bars intentional fraud and deceptive trade practice claims that stem from a statute such as the UTPCPL. *See Gadley v. Ellis*, No. 3:13-

cv-17, 2014 WL 3696209, at *4 (W.D. Pa. July 23, 2014) (citing *Covertech Fabricating, Inc. v. TVM Bldg. Products, Inc.*, No. 3:13-cv-150, 2014 WL 2605427, at *5 (W.D. Pa. June 11, 2014)). However, in *Werwinski v. Ford Motor Company*, 286 F. 3d 661 (3d Cir. 2002), the Third Circuit predicted that the Pennsylvania Supreme Court would indeed hold that UTPCPL claims are barred by the economic loss doctrine:

> The economic loss doctrine is designed to place a check on limitless liability for manufacturers and establish clear boundaries between tort and contract law. Carving out an exception for intentional fraud would eliminate that check on liability and blur the boundaries between the two areas of law, thus exposing manufacturers to substantially greater liability.

*Id*. at 680-81. The Third Circuit concluded that "exempting [statutory fraud] claims from the effects of the economic loss doctrine would virtually nullify the doctrine since [the statute] is broad enough to encompass nearly every misrepresentation claim in the commercial sales context, and claims arising from product failure can readily be recast as misrepresentation claims." *Id*. at 681 (citing *Weather Shield Mfg., Inc. v. PPG Indus., Inc.*, No. 97-C-707-S, 1998 WL 469913, at *5 (W.D. Wis. June 11, 1998)). After reviewing the relevant case law, this Court concluded that *Werwinski* was binding and dispositive of the issues at summary judgment in this case.

In deciding Defendant's summary judgment motion, this Court found that the only physical damage presented by Plaintiff was damage to the SIP panels themselves caused by Defendant's deficient installation and that Plaintiff had not presented evidence that these deficiencies caused damage to any property other than the "product itself"— the SIP panels. This Court explained, the economic loss doctrine only applies to claims for

7

"economic damages unaccompanied by physical injury or property damage." *Excavation Techs., Inc. v. Columbia Gas Co. of Pa.*, 985 A. 2d 840, 841 n.3 (Pa. 2009); *see also 2-J Corp*, 126 F. 3d at 541 (economic loss doctrine bars "loss that is neither physical injury nor damage to tangible property"). However, it is equally well-established that "property damage" within the meaning of the doctrine does not preclude recovery for damages to property other than the "product itself." *See 2-J Corp.*, 126 F. 3d at 542 ("[W]hile tort recovery is barred for damage a product causes to itself, such recovery is available for damage the failing product causes to 'other property.'"); *REM Coal Co., Inc. v. Clark Equip. Co.*, 563 A. 2d 128, 133 (Pa. Super. 1989) (noting that Pennsylvania law precludes recovery for economic losses in a negligence action if the only damage alleged is damage to the product itself, with no other property damage or personal injury alleged). Accordingly, this Court concluded, Plaintiff had failed to assert the type of physical property damage that is required to escape the purview of the economic loss doctrine.

Plaintiff now asserts that newly acquired evidence overcomes that previous deficiency. Specifically, Plaintiff contends that the deficient installation of the SIP panels is "now causing water damage to parts of the Plaintiff's home that are not 'the product itself.'" (ECF No. 42 at 3). Plaintiff explains that "on December 6, 2014, after two days of heavy rains, the Plaintiff, for the first time, found water damage to other parts of the house that are . . . proximately caused by the defective installation of the roof panels." (*Id*.). Plaintiff asserts, "[this] new water damage, if proven to be causally linked to the defective installation, is undisputedly damage beyond damage only to the 'product itself'" and that this claim is therefore no longer barred by the economic loss doctrine. (*Id.*

at 5). Plaintiff contends that this new evidence raises a dispute of fact as to Count III of the complaint and that summary judgment is therefore not appropriate. In support of his motion, Plaintiff submitted an affidavit along with photographs detailing the water intrusion and damage. (*See* ECF No. 42-1). Plaintiff also submitted the expert report of Owen Beachey, P.E., prepared on December 31, 2014, and which was based upon photographs provided by Plaintiff and an inspection conducted by Beachey. (*See* ECF No. 46). In his report, Beachey opined,

> [I]t is my professional opinion that the leak originated from the roof as a result of the defective installation of the roof panels and subsequent damage to the shingles. It is also my professional opinion that the leaking is causing and will cause, if left unchecked, degradation of the insulation, the wall, the floor covering and the floor joist structure, and will cause mold problems, where affected by the moisture.

(ECF No. 46-1 at 2). Subsequent to the filing of this report, Plaintiff submitted several additional affidavits to the Court, along with photographs of additional water intrusion and damage, and estimates from building contractors regarding the cost to repair the water damage. (ECF Nos. 47, 50-1, 51-1, 56-2). Plaintiff contends that the water damage he has suffered, "including but not limited to damage to his timberframe, walls, ceilings, etc., is damage to other property and the economic loss rule" therefore does not apply. (ECF No. 50 at 4).

In response, Defendant argues that Plaintiff's allegations of water infiltration and damage does not "require the Court to abandon the application of the economic loss rule" because Plaintiff is still seeking the same damages as before and thus his UTPCPL claim is barred. (ECF No. 48 at 2). Defendant contends that Plaintiff "is still seeking recovery for

repair to or replacement of his roof that he submits is required due to the installation of the roof panels." (*Id.* at 7). Thus, Defendant asserts, Plaintiff "has not suffered damage to 'other property,'" but continues to suffer damage only to the product itself. (*Id.* at 9). Defendant's contentions are unpersuasive, and the Court finds that the economic loss rule does not apply to the damages now alleged by Plaintiff.

Plaintiff's motion for reconsideration requires this Court to determine, under the facts of this case, the distinction between the "product" and "other property." Here, the defective product is the SIP panel roof installed by Defendant. As previously decided by this Court, the economic loss doctrine bars Plaintiff's claim for damages under the Pennsylvania UTPCPL as to the SIP panels themselves. Such damages remain unrecoverable under the UTPCPL pursuant to the economic loss doctrine. Nevertheless, Plaintiff has presented evidence of damage to other property, which includes the timberframe, walls, ceilings, floors, and contents of the home. The Court finds, under the facts of this case, that Plaintiff's asserted damages concerning this "other property" are not barred by the economic loss rule.

Plaintiff has presented new allegations—supported by photographs, expert opinion, and affidavits—that his home has sustained water damage to property other than the product itself because of the defective installation of the SIP panels by Defendant. These new allegations, if proven at trial, present damages that fall outside of the restrictions imposed by the economic loss doctrine. In contrast to the alleged damages regarding the SIP panels, the new damages alleged by Plaintiff are not damages to the product itself. As the Third Circuit has explained, "[a]n essential aspect of the . . .

economic loss doctrine is that while tort recovery is barred for damage a product causes to itself, such recovery is available for damage the failing product causes to 'other property.'" *2-J Corp. v. Tice*, 126 F. 3d 539, 542 (3d Cir. 1997) (quoting *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866 (1986)).

Defendant claims that the only allegations of damages by Plaintiff "relate to the structure of the home" and that such damages relate to the product itself and do not constitute damage to "other property." (ECF No. 48 at 9). Defendant's argument is unavailing. Here, the product is the SIP panel roof installed by Defendant. On the other hand, "other property" includes both contents of the home and other parts of the home's structure. *See Tennis v. Ford Motor Co.*, 730 F. Supp. 2d 437, 449 (W.D. Pa. 2010) ("economic loss doctrine does not bar a plaintiff from recovering economic damages for personal property"); *Tice*, 126 F. 3d at 542 (explaining that damaged property not part of the defective product should not be "integrated" such that the "damage to that property is tantamount to damage to the product itself"), *but see Longport Ocean Plaza Condo., Inc. v. Robert Cato & Associates, Inc.*, No. 00-cv-2231, 2002 WL 436742, at *5 (E.D. Pa. Mar. 18, 2002)[3] ("[T]o the extent products used in construction prove defective and result in harm

---

[3] The Court finds the instant case distinguishable from other construction cases, such as *Longport Ocean Plaza Condo., Inc. v. Robert Cato & Associates, Inc.*, No. 00-cv-2231, 2002 WL 436742 (E.D. Pa. Mar. 18, 2002), which have held that "damage to the attendant structure of a building as a result of products used in construction does not constitute damage to 'other property.'" *Id.* at *5. As the court in Longport noted, "In determining whether a product has injured only itself in an action in which a component part manufactured by a defendant causes injury to the product of which it is a part, a court should look not to the product manufactured by the defendant, but the product purchased by the plaintiff." *Id.* (citing *King v. Hilton–Davis*, 855 F. 2d 1047, 1051 (3d Cir. 1988)). Here, Plaintiff was constructing his own timberframe home and purchased the SIP panels to be installed by Defendant. The product purchased by Plaintiff was the SIP panels as installed by Defendant—a product that Plaintiff researched and specifically bought to serve a particular

to a building itself, these damages should not be considered damage to 'other property.'"). Here, Plaintiff built his own home and contracted with Defendant to install the roof on his custom built home with a unique product. This fact distinguishes this case from many other cases in the construction context where a home is constructed by a general contractor and then purchased by the homeowner. Here, the homeowner—Plaintiff—contracted with Defendant for the sole purpose of installing a particular product on his roof. Defendant cannot now hide behind the economic loss doctrine to escape the allegations of damage to other parts of the home resulting from his improper installation.

Accordingly, the Court finds that Plaintiff's new evidence creates an issue of fact concerning Plaintiff's claim for damages under the UTPCPL. Thus, the Court will vacate its previous ruling that granted summary judgment[4] in favor of the Defendant on this issue. Plaintiff will be permitted to present evidence of damages as to "other property,"

---

purpose in the structure of his custom built home—and this product does not extend so far as to be integrated with the entire home. While in many construction cases, "the subject of the bargain . . . is the successfully completed building, not simply its component parts," (*Longport*, at *5), here, the subject of the bargain was the successful installation of the SIP panels on the roof and nothing more.

[4] Summary judgment is appropriate only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Melrose, Inc. v. Pittsburgh*, 613 F. 3d 380, 387 (3d Cir. 2010). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F. 3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F. 3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F. 3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F. 3d 768, 777 (3d Cir. 1994)).

as explained above; however, the economic loss doctrine precludes Plaintiff's damages claims as to the SIP panels as damage to the product itself.

### B.       Gist of the Action Doctrine

This Court did not reach the issue of whether the gist of the action doctrine barred Plaintiff's UTPCPL claims in its memorandum opinion on Defendant's summary judgment motion.  However, the Court now finds it necessary to address the applicability of the gist of the action doctrine to Plaintiff's claims.

Under Pennsylvania law, the gist of the action doctrine maintains the conceptual distinction between contract law and tort law.  *See, e.g., Covertech Fabricating, Inc. v. TVM Bldg. Products, Inc.*, No. 3:13-cv-150, 2014 WL 2605427, at *4 (W.D. Pa. June 11, 2014); *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A. 2d 10, 14 (Pa. Super. Ct. 2002).  The Pennsylvania Supreme Court recently issued a published opinion clarifying the appropriate analytical framework for applying the gist of the action doctrine.  *See Bruno v. Erie Ins. Co.*, 106 A. 3d 48 (Pa. 2014).  In *Bruno*, "the Court discussed the doctrine at length and observed that '[it] has consistently regarded the nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint, to be the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract.'"  *Norfolk S. Ry. Co. v. Pittsburgh & W. Virginia R.R.*, No. 2:11-cv-1588, 2015 WL 1859127, at *33 (W.D. Pa. Apr. 22, 2015) (quoting *Bruno*, 106 A. 3d at 68).  The Pennsylvania Supreme Court explained,

> In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere

labeling by the plaintiff of a claim as being in tort, e.g., for negligence, is not controlling. If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Bruno*, 106 A. 3d at 68 (citations omitted). Thus, the Court reaffirmed the "duty-based demarcation" as "the touchstone standard for ascertaining the true gist or gravamen of a claim pled by a plaintiff in a civil complaint." *Id.* at 69. This Court will now evaluate Plaintiff's UTPCPL claim pursuant to the *Bruno* analysis.

In his complaint, Plaintiff alleged that Defendant engaged in unfair and deceptive acts and practices in violation of the UTPCPL by

[R]epresenting that the services which were to be provided and which ultimately were provided in installing the SIPS panels were of a particular standard, quality or grade when said services were insufficient, erroneous and incomplete thereby not only compromising the integrity of Gary Gadley's roof but his entire home . . .

[F]ailing to comply with the terms of the written guarantee or warranty given by the Defendant to the Plaintiff at the time of the purchase of the services . . .

[M]aking improvements on tangible, real property of a nature or quality inferior to or below the standard to that agreed to in the Contract between the Plaintiff and the Defendant . . .

[E]ngaging in other fraudulent and deceptive conduct that creats a likelihood of confusion or misunderstanding as described otherwise in [the] Complaint . . .

(ECF No. 1-2 at 12-13, Compl. ¶¶ 48(a)-(d)).  Each of these allegations addresses the violation of a particular statutory provision of the UTPCPL.  *See* 73 P.S. § 201-2(v), (vii), (xiv), (xvi), and (xxi).  Thus, Plaintiff's allegations of Defendant's tortious conduct arise from Defendant's violation of duties imposed by statute rather than contract, and the gist of the action doctrine will not bar Plaintiff's claim.  *See Bruno v. Erie Ins. Co.*, 106 A. 3d 48, 65 (Pa. 2014) (while an action in tort "may not be brought for breaches of what are purely contractual duties, . . . a [tort] claim may be brought against a party for actions taken in performance of contractual duties, if those actions constitute a breach of a general duty of care created by law and owed to all the public") (citing *Horney v. Nixon*, 61 A. 1088, 1089 (Pa. 1905)).

The facts of the case *sub judice* are similar to those in *Bruno*, and thus this Court finds that, for the same reasons articulated by the Pennsylvania Supreme Court in *Bruno*, Plaintiff's claims in this action for violations of the UTPCPL are not barred by the gist of the action doctrine.  In *Bruno*, a homeowner purchased a home and began to remodel it. *Bruno*, 106 A. 3d at 52.  The homeowner discovered black mold during the remodeling process and attempted to initiate a claim under his homeowner's insurance policy.  *Id*. Following an inspection by an insurance adjuster and an engineer, the adjuster informed the homeowner that the mold was harmless and that the remodeling should continue without any remedial measures.  *Id*.  As the Court explained,

> Based on the assurances of the adjuster and engineer that the mold was not a health hazard, the Brunos continued to live in the house, and Mr. Bruno continued with the renovations.  As the month of October progressed, Mr. Bruno and his contractor attempted to eradicate the mold which they had previously discovered, and they also removed additional

sheets of paneling. These actions revealed more leaking pipes and additional areas of mold growing on the walls beyond that which was initially discovered.

*Id.* at 52. Nevertheless, after a subsequent visit by the engineer, who performed tests of the mold, the adjuster did nothing else for the homeowner. *Id.* The homeowner and his family then began suffering health issues, which were eventually connected to the mold growing in homeowner's home. *Id.*

In evaluating these allegations, the Court concluded that the homeowner's claim against the insurance company, Erie, was "predicated on the allegedly negligent actions taken by its agents on behalf of Erie *while* they were performing Erie's contractual obligation to investigate the claim made by the Brunos under their policy in order to determine if the mold discovery triggered any of Erie's aforementioned payment obligations." *Id.* at 70 (emphasis in original). Importantly, the Court noted that the homeowner made complaints to the adjuster and engineer during their inspection, but that the adjuster rendered "unfounded advice" that the mold was harmless and that the homeowner should continue with his remodeling. *Id.* at 71. It was "because of this advice and recommendation" that the homeowner continued with his remodeling, which later led to the family's health problems and the home being rendered uninhabitable. *Id.* Thus, the Court concluded,

> [W]hile Erie had contractual obligations under its policy to investigate whether mold was present, and also to pay for all property damage caused by mold, the substance of the Brunos' allegations is not that it failed to meet these obligations; rather, it is that Erie, during the course of fulfilling these obligations through the actions of its agents, acted in a negligent manner by making false assurances regarding the toxicity of the mold and affirmatively recommending to the Brunos that they continue

their renovation efforts, which caused them to suffer physical harm because of their reasonable reliance on those assurances. Consequently, these allegations of negligence facially concern Erie's alleged breach of a general social duty, not a breach of any duty created by the insurance policy itself. The policy in this instance merely served as the vehicle which established the relationship between the Brunos and Erie, during the existence of which Erie allegedly committed a tort.

*Id*. at 71.

Plaintiff Gary Gadley in this case has made substantially the same allegations. Plaintiff has alleged that Defendant entered into a contract with Plaintiff to install the SIP panels on Plaintiff's roof. (ECF No. 1-2 ¶¶ 9, 10). This contract served "as the vehicle which established the relationship" between Plaintiff and Defendant, "during the existence of which [Defendant] allegedly committed a tort." *Bruno*, 106 A. 3d at 71. Specifically, Plaintiff alleges that Defendant "knew or should have known" that he was improperly installing the SIP panels and that he did not "attempt to rectify or notify [Plaintiff] of the improper installation." (ECF No. 1-2 ¶¶ 18-22). Additionally, Plaintiff has alleged that "despite [Plaintiff's] visual observation that the roof panels were improperly installed," he paid Defendant to complete the project "based on misrepresentation from [Defendant]." (*Id.* ¶ 23). Plaintiff also alleges that the improper installation has weakened the structural integrity of the roof as well as caused other damages, in addition to the cosmetic issues presented by the improper installation of the SIP panels. (*Id.* ¶¶ 24-31). Significantly, Plaintiff alleges that his continued progress on constructing his home and completing the installation of the roof were based on "representations of [Defendant] made . . . prior to, during and after installation of the SIPS panels." (*Id.* ¶¶ 49-51).

In Plaintiff's deposition filed with this Court during the parties' briefings on summary judgment, Plaintiff elaborated on Defendant's alleged misrepresentations. Plaintiff stated that he noticed something was wrong during the early part of the installation of the SIP panels. (ECF No. 26-1 at 13). Plaintiff testified that he then stopped Defendant and called the issue—that the panels were not lining up properly—to Defendant's attention. (*Id.*). Plaintiff and Defendant discussed how to proceed. Plaintiff testified that he believed Defendant because Defendant "is the expert, [he] knows what he's doing." (*Id.* at 14). After consultation with some other individuals, Defendant decided to continue with the installation of the panels. (*Id.* at 15-16). Plaintiff testified that he relied on Defendant as "the expert" because he "held himself out as knowing what he was doing." (*Id.* at 23). Plaintiff stated that he "trusted" Defendant regarding his decision to proceed with the installation of the roof panels, despite Plaintiff's concern with the way that they were not properly aligned. (*Id.*). Plaintiff testified that he relied on Defendant's assurances during the installation process. (*Id.* at 24). Plaintiff contends that, despite these assurances, Defendant knew or should have known that his installation of the SIP panels was defective and that the improper installation would cause both cosmetic and structural complications to the roof and to the entire home.

Plaintiff's allegations in the complaint and testimony at his deposition bring his tort claim against Defendant squarely within the analysis of the Pennsylvania Supreme Court in *Bruno*. Plaintiff's tort claim under the UTPCPL arises, not from Defendant's breach of his contractual duties, but from Defendant's breach of other duties imposed by law. Specifically, like in *Bruno*, Defendant allegedly made representations and assurances

upon which Plaintiff relied in constructing his home, and which had a detrimental effect on the structural integrity and appropriate functioning of the roof. Thus, Plaintiff's claim against Defendant "is predicated on the allegedly negligent actions taken by [Defendant] *while* [he was] performing [his] contractual obligation" to properly install the SIP panels. *Bruno v. Erie Ins. Co.*, 106 A. 3d 48, 70 (Pa. 2014).

Defendant's misrepresentations and assurances, like those in *Bruno*, are what distinguish Plaintiff's tort claim from a breach of contract claim. *See Skold v. Galderma Labs., L.P.*, No. 14-cv-5280, 2015 WL 1740032, at *10 (E.D. Pa. Apr. 17, 2015); *New York Cent. Mut. Ins. Co. v. Edelstein*, No. 3:14-cv-0829, 2015 WL 412519, at *9 (M.D. Pa. Jan. 30, 2015). Thus, the nature of the duty that forms the basis of Plaintiff's tort claim is different from the duty upon which the breach of contract claim rests. *See Norfolk S. Ry. Co. v. Pittsburgh & W. Virginia R.R.*, No. 2:11-CV-1588, 2015 WL 1859127, at *33 (W.D. Pa. Apr. 22, 2015) (finding the duties were the same and dismissing claim under gist of the action rule). Plaintiff's allegations of tortious conduct go beyond simple misconduct of a "breach of . . . the specific executory promises" of the contract. *See SEI Investments Global Funds Servs. v. Citibank, N.A.*, No. 14-cv-5972, 2015 WL 1808702, at *4 (E.D. Pa. Apr. 21, 2015) (finding gist of the action doctrine bared plaintiff's negligence claim because the conduct on which the contract claim and tort claim were based were the same). Accordingly, the gist of the action doctrine does not bar Plaintiff's UTPCPL claim.

**V.      Conclusion**

For the reasons set forth above, Plaintiff's motion for reconsideration is granted. The Court vacates its grant of summary judgment in favor of Defendant Jerry Ellis doing business as Jerry Ellis Construction with respect to Count III, except as to damages to the SIP panels themselves.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GARY GADLEY,                          )
                                      )
                Plaintiff,            )
                                      )        CIVIL ACTION NO. 3:13-17
        v.                            )
                                      )        JUDGE KIM R. GIBSON
JERRY ELLIS and MARCIA ELLIS,         )
*trading as* JERRY ELLIS              )
CONSTRUCTION,                         )
                                      )
                Defendants.           )

## ORDER

AND NOW, this **14th** day of May 2015, for the reasons set forth in the attached memorandum opinion, **IT IS HEREBY ORDERED** that Plaintiff's motion for reconsideration (ECF No. 41) is **GRANTED**. The Court **VACATES** its previous decision (ECF No. 38) with respect to Count III of Plaintiff's complaint, except as to damages to the SIP panels themselves. All other provisions of the Court's Memorandum Opinion and Order, dated July 23, 2014, remain in effect.

**IT IS FURTHER ORDERED** that Plaintiff's motion to reopen discovery is **DENIED**.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE